UNITED STATES DISTRICT COURT        EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,                            **DEFENDANT WEINHART**
v.                                      **SENTENCING MEMORANDUM**

JESSICA HENSEN                              Case No. 13 CR 135 (WCG)
a/k/a JESSICA WEINHART et al,

        Defendants.

---

Defendant Jessica Hensen (Weinhart), through his/her attorneys, SISSON AND KACHINSKY LAW OFFICES, submits the following as her sentencing memorandum in the above matter. In writing this memorandum, the undersigned attorney has liberally borrowed some of the legal analysis submitted by other defendants previously sentenced by this court in the above matter. However, the facts and applicability of the facts to the law submitted to the court in this memorandum are unique to Weinhart. Weinhart asks this court to impose a sentence of probation with home or community confinement.

## APPLICABLE LAW

The Presentence Investigation Report (PSR) calculates the advisory guidelines either 25 or 27 depending upon whether two points are added as requested by the Government for obstruction of justice. ¶¶ 69, 72-81[1]. Weinhart's criminal history is I as she has no prior record other than a

---

[1] The PSR is self-contradictory on whether the enhancement for obstruction of justice applies or not. Paragraphs 69, 77 and 129 provide different positions. The addendum appears to agree with Weinhart that the additional two points are not appropriate.

1

minor traffic ticket . ¶¶83-90.  The advisory imprisonment range is 70-87 months at offense level 27 and 57-71 months at offense level 25.

While the court must still correctly calculate the guideline range,  it may not treat that range as mandatory or presumptive.  *Gall v. United  States*, 552 U.S. 38, 49, 51, 128 S. Ct. 586, 169 L.Ed.2d 445 (2007).  *Nelson v. United States*, 555 U.S. 350, 352,  129 S.Ct. 890, 172 L.Ed.2d 719 (2009).  The Guideline range is "one factor among several" to be considered in imposing an appropriate sentence under 18 USC § 3553(a).  *Kimbrough v. United States*, 552 U.S. 85, 90, 128 S. Ct. 558, 169 L.Ed.2d 481 (2007).   The court must make an individualized determination of the statutory factors to impose a sentence sufficient but not greater than necessary to accomplish the goals of sentencing.  *Pepper v. United States,* 562 U.S. ___,  131 S.Ct. 1229, 1242-43, 179 L.Ed.2d 196   (2011).   A sentencing judge has considerable discretion to individualize the sentence to the offense and the offender within the statutory requirements.  *United  States v. Wachowiak*, 496 F3rd 744 , 747 (7th Cr. 2007).  This includes providing equity with sentences imposed in  other cases to avoid unwarranted disparities.  See discussion in *United States v. Prado*, 743 F.3rd 748, 752 (7th Cir. 2014).  This is considerably important in this case considering the sentences imposed upon codefendants as outlined on page 3 of the PSR.  Since the PSR was written, Eileen Goltz was sentenced to 14 months imprisonment with 3 years of supervised release and other conditions.

Although Weinhart is not eligible for probation under the Guidelines, she is eligible statutorily for between one and five years.  ¶¶ 139-140.  She can also be ordered to perform community service in lieu of a fine.  ¶ 144.

2

## NATURE OF THE OFFENSE

The court heard the testimony at trial and read the submissions by Weinhart and the Government. While there may be a dispute as to what percentage of notes on customer files penned by Weinhart were the result of contact by telemarketers with the customer instead of Weinhart or exactly what Weinhart told the federal agents her knowledge of ATR was when interviewed, there is no reasonable dispute that Weinhart was primarily a clerical employee of ATR who made few, if any, sales calls. As Weinhart testified, there were many parallels between her duties at ATR and at her prior employer, Bergstrom Automotive. She worked at ATR 11 months. Her W-2s reflected earnings on an hourly basis that was not dependent upon percentage based commissions or ATR's profitability. Although Weinhart's role was an integral part of ATR, she did not directly solicit elderly timeshare owners in more than an incidental manner. In some ways, Weinhart's role was similar to Mindy Parks's administrative role in supporting Mark Parks' enterprises.

A theme that ran throughout Weinhart's role at ATR was that she was following the orders of her employer. ATR was not an inherently illegal enterprise such as a prostitution ring fronting as an escort service. It was at least in form a marketing service that unfortunately operated in a fraudulent manner. Weinhart blindly trusted her childhood friend, Ashley Conant. With 20-20 hindsight, she should have known better given Conant's prior record and the observations she made at work as her months of employment at ATR continued. As the court observed during Conant's testimony at trial, Conant was skilled in interpersonal communications and could be very persuasive.

Weinhart was employed at ATR during the highest levels of general unemployment during the Great Recession. While quitting was an option, Weinhart was understandably fearful of

3

difficulties she would have in finding other employment had she made that choice. She was raising Kendra Kieler as a single mother and not receiving the level of economic support from Kendra's father that she does now. See paragraph 107 of PSR.

Belief in following orders (something that was an important part of Weinhart's upbringing) and fear of economic destitution is never an excuse for involvement in criminal activity. But it explains what the jury probably found as Weinhart 's willful blindness to what was going on around Weinhart at ATR. Weinhart's participation in ATR was not initially a deliberate participation in a criminal enterprise (such as selling illegal drugs) or engaging in clearly immoral activity (such as the soldier who follows the order of a superior officer to kill or degrade enemy soldiers in violation of laws of armed conflict or the telemarketers that lied about having buyers for timeshares).

Weinhart's participation in ATR was not the end result of a criminal orientation. It was caused by naiveté and poor legal and moral judgment clouded by legitimate fear of personal economic consequences that would have occurred to Weinhart and Kendra had she chosen to quit.

## PERSONAL BACKGROUND

The ten letters submitted on behalf of Weinhart[2] and her detailed personal history in the PSR set forth a history of a young lady who had a rebellious adolescence but matured in her early 20's as she provided care for her daughters, enhanced her formal education and recently married. Of the defendants in this case, Weinhart has had the most consistent pro-social orientation. Her employer, Douglas Newhouse of Sure Dry Basements, maintained a job for Weinhart during her

---

[2] These letters are awaiting scanning at the undersigned attorney's office. They will be submitted by ECF with a cover letter around mid-day on Monday, January 26, 2015.

4

care of Rilynn before the indictment in this case and during the numerous interruptions of her employment during the course of this case. Few employers are so accommodating for a low level employee.

Weinhart has a strong work ethic and positive attitude toward serving others. She is not likely to commit another criminal offense. She has been deterred by the stress this case has placed on her from ever being part of a business engaged in questionable business practices.

## COLLATERAL CONSQUENCES

As a result of the jury's verdict, Weinhart is a convicted felon. This will pose considerable barriers to her should she seek career advancement into fields that require professional licensure. Following the jury's verdict, her name appeared in the Appleton newspaper and brought her a certain level of unwanted attention and shame. Her mother and stepfather in Crivitz also heard from others who read of Weinhart's conviction. While the shame associated with conviction of criminal activity is not often a significant form of punishment, it was and will be so for Weinhart who has always considered herself part of the law abiding community. It is comparable in some respects to the shame imposed upon a prominent Oshkosh attorney convicted of tax evasion in this court during the last year.

## OTHER SENTENCING PROVISIONS

Weinhart believes that the restitution amount of $104,766$^3$ joint and several with four co-defendants with minimum payments of $50 per month and application of tax refunds is

---

[3] This amount is considerably more than Weinhart's gross earnings from ATR of $ 15,111.91 during 2009 and $9694 during 2010. Weinhart's earnings from the conspiracy were less than any other indicted party with the exception of Jessica Gilbert who worked for a shorter period of time as a telemarketer at MTS with some managerial responsibilities.

5

appropriate. ¶¶145, 136-137.  Drug testing is also unnecessary.  Community or home confinement and community service instead of imprisonment will enable Weinhart to meet her family responsibilities and begin payment of restitution at an earlier date.  Considering the sentences imposed upon co-defendants in this matter and the circumstances of Weinhart's involvement, it would meet the goals of 18 USC § 3553(a).

## CONCLUSION

For the reasons stated above, Weinhart requests this court place her on probation with appropriate conditions.

Dated this 25th day of January 2015.

           /s/
SISSON AND KACHINSKY LAW OFFICES
By: Len Kachinsky
Attorneys for Defendant Jessica Weinhart
State Bar No. 01018347
103 W. College Avenue  #1010
Appleton, WI  54911-5782
Phone: (920) 993-7777
Fax: (775) 845-7965
E-Mail:  LKachinsky@core.com

6