UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                    Case No. 13-CR-135

JESSICA M. GILBERT ,

        Defendant.

---

## GOVERNMENT SENTENCING MEMORANDUM

---

      The United States of America, by James L. Santelle, United States Attorney for the Eastern District of Wisconsin, Daniel R. Humble, Assistant United States Attorney, hereby files this sentencing memorandum in support of the Government's recommendation to be made at the sentencing hearing on January 28, 2015. The defendant was found guilty at trial of conspiracy to commit mail and wire fraud, contrary to Title 18, United States Code, Section 1349, and is also subject to penalty enhancement under Title 18, United States Code, Section 2326(2)(A) (the "SCAMs Act").

      Defendant faces a total offense level of 27, corresponding to an advisory guideline range of 70 to 87 months, as well as a mandatory consecutive sentence of up to 10 years pursuant to the SCAMs Act. To accomplish the objectives of 18 U.S.C. § 3553(a) and avoid unwanted disparities in sentences that similarly situated defendants receive in this and other districts across the United States, the Government requests a sentence of imprisonment within the applicable guideline range.

The Court is well familiar with the facts of this case having presided over the trial of three co-defendants, including defendant Gilbert. The defendant was a telemarketer and acted in a managerial capacity at Midwest Timeshares one of the three entities comprising one of the most wide-sweeping mail and wire fraud schemes in the history of the Eastern District of Wisconsin; a scheme which resulted in the victimization of well over twelve hundred individuals throughout the United States and Canada. By and large these individuals were elderly, and many had been previously victimized by similar fraudulent schemes on more than one occasion. The defendant's participation in the fraudulent conspiracy spanned approximately 16 months and the government agrees with the presentence report that the defendant is responsible for a loss amount of approximately $240,000.

In determining the appropriate sentence, "a district court must begin by correctly calculating the applicable Guidelines range." United States v. Evans, 526 F.3d 155, 160 (4th Cir. 2008). The advisory Guidelines are "the starting point and the initial benchmark." Gall v. United States, 128 S.Ct. 586, 596 (2007). The Guidelines "seek to embody the § 3553(a) considerations, both in principle and in practice. . . . [I]t is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." Rita v. United States, 551 U.S. 338, 350 (2007). "[A] Guidelines sentence will usually be reasonable, because it reflects both the Commission's and the sentencing court's judgment as to what is an appropriate sentence for a given offender." Id. at 351. Ultimately, however, the appropriate sentence is for the District Court to determine based on the factors enumerated in 18 U.S.C. § 3553(a), and "any sentence, within or outside of the Guidelines range, as a result of a departure or of a variance, must be reviewed by

appellate courts for reasonableness pursuant to an abuse of discretion standard." United States v. Diosdado-Star, 630 F.3d 359, 365 (4th Cir. 2011).

The 18 U.S.C. § 3553(a) factors dictate a guideline sentence for Defendant. While the post-Booker sentencing regime affords the sentencing court with discretion in selecting the appropriate sentence, "[a]s a matter of administration and to secure nationwide consistency, the advisory Guidelines should be the starting point and the initial benchmark" in determining the appropriate sentence. Gall v. United States, 552 U.S. 38, 49 (2007). In addition, the Seventh Circuit has stated "we apply a rebuttable presumption of reasonableness to within-Guidelines sentences." See United States v. Mykytiuk, 415 F.3d 606, 608 (7th Cir. 2005).

The nature and circumstances of the offense are highly disturbing. The defendant freely and knowingly preyed upon individuals in a particularly vulnerable position. These individuals, most of them elderly, invested in timeshare properties or timeshare "points" at resorts all over the hemisphere in the hopes of spending vacations with family and friends for decades to come. Whether those vacations occurred or the time went used, these individuals now find themselves with increasing annual maintenance fees and assessments on a property right they no longer wish to own and cannot sell. It is a situation tailor made for an ever expanding group of unscrupulous and dishonest individuals like the defendant who view such vulnerability in terms of dollar signs. In 2013 alone, the Federal Trade Commission took "191 actions to stop fraudulent operations hawking timeshare property resale services and travel prizes, including three FTC cases, 83 civil actions brought by 28 states, and 25 actions brought by law enforcement agencies in 10 other countries. More than 184 individuals face criminal prosecution by U.S. Attorneys and local law enforcement."

The serious nature of the offense here is high, and the need for imprisonment is apparent. Unlike other white-collar schemes which steal millions of dollars from a handful of individuals, the defendant helped defraud several hundred or thousand dollars from an expansive pool of vulnerable victims. Telemarketing frauds such as the one operated by Midwest Timeshares steal more than just money from its victims; it steals their trust and faith in others, their trust in themselves and their own judgment, and as noted in the PSR made them feel "completely embarrassed, duped, and foolish." (PSR ¶67). The most common refrain of victims relayed to the U.S. Attorney's Office is that being victimized by the defendant and her co-conspirators made them feel "stupid."

Fraudulent schemes require deterrence – both general and specific – which only can be accomplished through periods of incarceration. "Because economic and fraud-based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence." United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) (internal quotation omitted). "Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment." Id. at 1227. Put differently, as the Seventh Circuit has explained, "[t]he system of penalties under the Guidelines is constructed on the belief that . . . longer sentences of imprisonment, are more effective deterrents. A large body of evidence supports this intuition." United States v. Turner, 998 F.2d 534, 536 (7th Cir. 1993). A guideline sentence is necessary to deter the defendant and others from preying on the vulnerable and the elderly.

The Court also should consider how the defendant's sentence compares to that of other participants in timeshare resale telemarketing fraud across the United States. Several

individuals similarly situated to the defendant received lengthy sentences for similar conduct. These include:

- U.S. v. Brazel (3:11CR30142-DRH). Defendant Ryan Brazel pled guilty for his participation as a top "closer" in a timeshare resale scheme. Defendant Brazel was sentenced to 121 months incarceration. His Offense Level was 31 and his Criminal History Category II.

- U.S. v. Morris (3:11CR30142-DRH). Defendant Brian Morris pled guilty based on his role as a manager in a timeshare resale scheme. Mr. Morris received a sentence of 168 months incarceration. His Offense Level was 33 and his Criminal History Category III.

- U.S. v. Garten (3:12CR30320-MJR). Defendant Kathryn Garten was convicted after trial of being a telemarketer in a $6 million timeshare resale telemarketing scheme. Defendant Garten was sentenced to 168 months incarceration and ordered to pay $909,278 in restitution. Her Offense Level was 35 and her Criminal History Category I.

Most importantly, the defendant has failed to accept responsibility for her actions. Compounding her denial of responsibility, she testified falsely at trial in an attempt to mislead the jury and thwart the government's prosecution of the matter. She perjuriously denied lying to victims to "close deals" which was directly and clearly refuted by the testimony of victim James Christensen and the audio recording of Ms. Gilbert's telephone call with Eleanor Supple, wherein she falsely represented herself as "Angela" and made misrepresentations to the victim to induce her to turn over her account information. Also of concern to the government, was her repeated accusation that federal agents Ronald Hammen and Derik Thieme lied under oath and falsified reports in an effort to create out of whole

cloth evidence against her. She should not benefit from her attempts to mislead the jury and besmirch the reputations of two dedicated law enforcement agents

Therefore, the government respectfully requests that the Court impose a sentence of imprisonment within the applicable guideline range of 70 – 87 months.

Dated at Green Bay, Wisconsin, this 28th day of January, 2015.

JAMES L. SANTELLE
United States Attorney

By:

s/ Daniel R. Humble
DANIEL R. HUMBLE
Assistant United States Attorney

Attorneys for Plaintiff
Office of the United States Attorney
Eastern District of Wisconsin
Green Bay Division
205 Doty Street, Suite 301
Green Bay, WI 54301